## CARTER *v.* GRAY.

Opinion delivered June 4, 1906.

1. SPECIFIC PERFORMANCE—MISJOINDER OF PARTIES.—Where, the patentee of a tract of land, consisting of 160 acres, agreed by separate contracts to convey to A a certain 20 acres thereof and to convey to B one-fourth of the same 20 acres, there was no misjoinder of parties in a suit by A and B against such patentee to enforce specific performance of the two contracts. (Page 281.)

2. ESTOPPEL—ACCEPTANCE OF BENEFIT.—A grantee who accepts the benefit of a deed procured by his agent will be held to have had notice of and to be bound by a contract which the agent made with the grantor, whereby a part of the land was to be reconveyed to the latter. (Page 283.)

3. CORPORATION—NOTICE TO AGENTS.—Notice to the agents and officers of a corporation is notice to the corporation itself. (Page 283.)

4. MINING CLAIM—VALIDITY OF PATENT.—A patent from the United States for a placer claim covering 160 acres is not void because a claim for a lode has been filed on 20 acres of the ground, and the price per acre of the latter class of land is double that of the former, if the patent expressly excepted any lode of valuable metal known to exist within the limits of the grant, especially if the Government makes no complaint. (Page 283.)

79—18

Appeal from Marion Circuit Court in Chancery; *Elbridge G. Mitchell,* Judge; affirmed.

### STATEMENT BY THE COURT.

In 1890 John G. Gray and N. T. Bennett were the owners of a mining claim of 20 acres in Marion County, Arkansas, known as the "Blue John Lode Claim."

Afterwards, in December, 1891, John G. Gray, William Kaler, E. V. M. Powell, J. C. Berry, C. W. Hequenberg, J. H. Bethune, C. B. Adams and W. A. Dripps located a mining claim known as the "Blue John Placer Claim." This placer claim contained 160 acres. It covered the 20 acres of the "Blue John Lode Claim" and 140 acres additional. The situation of these two to each other are shown in the following plat:

All of the parties who located this placer claim except Gray conveyed their interest to W. Frank Carter, of St. Louis. Carter thus became the owner of this 160-acre mining claim, with the exception of the one-eighth interest held by Gray. Carter was not the real owner, but held the title as the agent and trustee of other St. Louis parties.

As Carter desired to secure a patent to this land, and as he lived in St. Louis, some distance away, he executed the following power of attorney to E. V. M. Powell:

"Know all men by these presents:

"That I, W. Frank Carter, of the city of St. Louis, State of Missouri, a citizen of the United States, do hereby constitute and appoint E. V. M. Powell, County of Marion, State of Arkansas, my attorney in fact, for me and in my name to make application for patent of the United States in the proper land office upon

any and all placer mining claims owned by me or in which I may be interested situated in Buffalo Mining District, County of Marion, State of Arkansas, and to make or cause to be made any and all surveys, relocations, affidavits and all necessary papers which may be required in the prosecution of such application, or to perfect or protect the title thereto, and to do all other acts and things in and about the premises which I myself, if present, could do, until patent is finally delivered. Also in case of adverse claim, I authorize him to employ counsel and take all measures necessary to defend against said adverse claim or suit in support thereof, either in the land office or in judicial proceedings, and in such proceedings to execute any bonds or other papers, and verify all proceedings, to and including appeal or writ of error.

"Witness my hand and seal this 24th day of September, [Seal.]          A. D. 1892.

"W. FRANK CARTER."

This power of attorney was duly acknowledged.

Afterwards Powell made a contract with Gray and Bennett, the owners of the lode claim, that Gray should also convey to Carter his one-eighth interest in the Blue John placer claim, and that Carter, so soon as the patent was procured, should, upon the payment of their *pro rata* of the total expenses in procuring the patent, convey to Gray and Bennett such portion of the land as was covered by the Blue John lode claim. In pursuance of such agreement, Powell executed in the name of Carter a bond to Gray as follows, towit:

"Know all men by these presents:

"That I, W. Frank Carter, of the city of St. Louis, State of Missouri, am firmly bound unto John G. Gray, of Webb City, State of Missouri, in the sum of five thousand dollars ($5,000), and by these presents do firmly bind my heirs, executors and assigns to the full amount of the above stated five thousand dollars ($5,000).

"The conditions of this bond are as follows: That, whereas the said John G. Gray did, by deed dated October 1, 1892, convey all his right, title and interest in and to what is known as the Blue John placer claim, No. two thousand, five hundred and thirty-four (2534) situated in the Buffalo Mining District, to

the end that I might make application for a patent for the same from the United States Government. Now, when I shall have received a patent from the United States Government, if I shall cause to be made or make unto the said John G. Gray, upon receipt from him of his *pro rata* proportion of the total amount of expenses incurred by reason of obtaining a patent to the Blue John placer mining claim, a good and sufficient deed for such portions of the said Blue John placer mining claim as is covered by what is known as the Blue John lode claim, and so set forth in deed from William Kaler and E. V. M. Powell, to John G. Gray, conveying the Blue John lode claim, which is duly recorded in the officer of the recorder of the Buffalo Mining District, at Yellville, Arkansas, then the above bond shall be void and of no force; otherwise to remain in full force and effect.

"Witness whereof I have hereunto set my hand and seal, this the 19th day of October, 1892.

"W. FRANK CARTER.
"By E. V. M. Powell, Attorney in Fact."

Powell also in the name of Carter executed a bond for title to Bennett, reciting that Bennett was the owner of a one-fourth interest in the Blue John lode claim, and obligating himself that, upon receipt of a patent from the United States to 160 acres of the Blue John placer claim, he would, upon the payment by Bennett of his *pro rata* of expenses, make a good and sufficient warranty deed to him for his interest in the Blue John lode claim.

After the patent was procured by Carter, he conveyed the land to the Southwestern Zinc Company, and this company refused to perform the contract made by Powell with Gray and Bennett. They brought this action for specific performance. The chancellor gave a decree in favor of plaintiffs, from which decree defendants appealed. The other facts are stated in the opinion.

*DeRoos Bailey, Arthur N. Sager, Jno. T. Hicks* and *J. W. & M. House,* for appellants.

1. The bonds for title are unacknowledged and unrecorded. They are not valid, and do not affect subsequent purchasers without notice. Kirby's Digest, § § 762, 763; 56 Ark. 239; 41 Ark. 363. They could not affect the zinc company, because it was a

stranger to the transaction, had no corporate existence when they were executed, there was no privity of contract between it and plaintiff, and they were unrecorded. They could not affect Carter, because they were *ultra vires* acts of Powell—not within the authority conferred by the power of attorney. 45 Ark. 81; 45 Ark. 309. The power of attorney is a clear and unambiguous statement of the authority and powers intended to be delegated. It must speak for itself. 28 Ark. 285; 85 N. W. 1019; 24 Cal. 127; 53 N. J. L. 189; 43 L. R. A. 808; 46 Pac. 295; 26 Am. St. Rep. 834; 75 Tex. 455; 43 Am. St. Rep. 819; 40 *Ib.* 313; 144 Ill. 248.

2. The deed from John G. Gray, purporting to convey his interest in the land, can not be explained or varied by oral testimony as to situation of the parties and their relation to the land in controversy. And the so-called bonds for title, as they were clearly beyond the authority of the attorney in fact, are inadmissible. 29 Ark. 544; 35 Ark. 156; 21 Ark. 69; 33 Ark. 150; 20 Ore. 482. The name of the grantee should have been inserted in the deed before delivery, to constitute a valid deed. 40 Ark. 58.

3. The doctrine of ratification can not affect the zinc company, because there was no privity of contract between it and plaintiff, and because it had no corporate existence when the so-called bonds for title were executed. As to Carter, it is in proof that the unauthorized acts of the agent were not known to him until the suit was instituted. There was no ratification on his part. 64 Ark. 220; 43 L. R. A. 809; 26 Am. St. Rep. 835.

4. Under the power of attorney, Powell had no authority from his principal, except as to placer mining claims. If plaintiff Gray conveyed the land for the purpose of having Carter procure a patient from the United States as a placer mining claim, whereas it should have been classed as a lode claim costing twice as much, this was a fraud on the Government, and plaintiffs are in no position to assert their claims in equity. 1 Pomeroy, Eq. Jur. (1905 Ed.), 663; 69 N. E. 614; 49 Am. St. Rep. 834; 57 Am. St. Rep. 450.

5. There was a misjoinder of parties plaintiff, and the motion to dismiss should have been allowed for this reason. The section providing for consolidation of actions seems to intend such consolidation only where there is one plaintiff. Kirby's Digest,

§ 6083. Moreover, the issues are not the same. Certain defenses would be available for one defendant and not for the other. The instruments sued on are different and independent contracts, and there is no privity of contract between plaintiffs. 65 Ark. 218. A motion to correct the misjoinder was proper practice, and should have been granted. 35 Ark. 365. See also, Phillips, Code Pl. § 200.

6. Plaintiffs were barred by the statute of limitation. By the terms of the bonds sued on, the conveyances thereunder were to be made when patent was secured, and the statute would run from the time such patent was secured. Kirby's Digest, § § 5069, 5074. Statutes of limitation are as binding in equity as at law. 47 Ark. 301; 46 Ark. 25. Equity discourages stale claims. Wood on Lim., Tit. "Stale Demands;" 95 U. S. 200; 70 Me. 17; 48 N. W. 767. If title to land which has passed through successive grantees, being subject in the hands of each to prior outstanding equity, comes to a purchaser for value and without notice, it is at once freed from these equities. He obtains a valid title. 17 Am. St. Rep. 686; *Ib.* 1; 75 S. W. 925; 25 S. W. 1098; 53 Am. St. Rep. 157; 148 U. S. 21.

*Woods Bros.,* for appellees.

1. The motion to dismiss should be sustained. If an action is not revived against the heirs within one year, it can only be done thereafter by their consent. Kirby's Digest, § § 6313, 6315; 69 Ark. 215; 76 Ark. 122.

2. All persons having an interest in the subject of an action and in obtaining the relief sought, may be enjoined as plaintiffs. Kirby's Digest, § 6005. Equity abhors a multiplicity of suits, and all parties in interest must be joined. 28 Ark. 171; 37 Ark. 511; 33 Ark. 240.

3. The seven-year statute of limitations would be the only statute applicable in this case. Suit was brought within 5½ years from date of patent. Since Carter was trustee for Gray and Bennett, the statute would not begin to run until they had notice of his repudiation of trusteeship. Beach on Mod. Eq. Jur. § 155; 23 Ark. 363.

4. It is conceded that the power of attorney must speak for itself, and insisted that the language of the instrument confers upon Powell full authority to do all the things he did in the

premises, and that Carter is bound thereby. He is chargeable with notice of all the transactions at the time they occurred, purposely received all of their benefits, and must be held to have ratified such transactions in their entirety. 64 Ark. 217; 55 Ark. 112; 11 Ark. 189; *Ib.* 378; 21 Ark. 554; 29 Ark. 131; 54 Ark. 216; 55 Ark. 240; 1 Beach, Mod. Eq. Jur. § 371; Bishop on Cont. § 1110; 44 Mich. 519; 48 Ga. 85; 44 Ill. 325. Carter being a member of the appellant corporation at the time of his conveyance, for a nominal consideration, of the land to it, it succeeded to all his liabilities in the premises, and acquired no greater right therein than he had. 45 Ark. 17; Greenleaf, Ev. § 283.

5. Powell had full knowledge of the rights and interests of Gray and Bennett. His knowledge of these facts was knowledge of his principal, Carter. He was also agent for the zinc company from the time of its organization, looking after its interests in Arkansas, which gave it full knowledge of Gray's and Bennett's rights. 1 Am. & Eng. Enc. Law, 419; 29 Ark. 99; 49 Ark. 336; 52 Ark. 11. Knowledge of facts sufficient to put a prudent person on inquiry is equivalent to notice. 23 Ark. 744; 58 Ark. 84; *Ib.* 446. Notice of an unacknowledged and unrecorded title bond makes it as valid and binding as if acknowledged and recorded. 44 Ark. 517; 61 Ark. 527; 58 Ark. 252; 16 Ark. 543.

6. Testimony of John G. Gray, L. G. Gray, Bennett and Powell was admissible to show the relation of the parties and the consideration for the deed. It is not to vary the deed and bond, but to explain them and show their purpose. Kirby's Digest, § .3667; 70 Ark. 253; 5 Ark. 321.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment of the chancery court of Marion County ordering a specific performance of a contract to convey land. The facts, briefly stated, are that in 1902 the plaintiff, John G. Gray, and N. L. Bennett, were the owners of a mining claim in Marion County, Arkansas, known as the Blue John lode claim, which covered twenty acres. This claim was located in 1887. In 1891 Gray and seven others located a mining claim known as the Blue John placer claim. This Blue John placer claim covered 160 acres of land, and included the 20 acres of the Blue John lode claim, owned by Gray and Bennett. Afterwards the appel-

lant, W. Frank Carter, of St. Louis, became the legal owner of the Blue John placer claim, with the exception of the one-eighth interest held by Gray. Although the legal title to this interest in the Blue John placer claim was held by Carter, he held it as trustee and agent for other parties. As Carter lived in St. Louis, he and the parties for whom he acted had another agent, Powell, in Marion County, Arkansas, to look after and perfect the title to this and other mining claims. In order to carry out this purpose, Carter, as the legal owner of a part of this claim, executed and delivered to Powell a power of attorney, which is set out in the statement of facts, and which authorized Powell to make application for patents, sign papers and make affidavits in the name of appellant Frank Carter, and do all things necessary to secure patents. He was also authorized, in case of an adverse claim, to employ counsel and do whatever might be necessary to protect the interests of Carter. This agent, Powell, concluded that it would be to the interest of Carter and the others whom he represented to get a conveyance to Carter from Gray of Gray's interest in the Blue John placer claim. Powell thereupon, acting as the agent of Carter and those he represented, made a contract with Gray and Bennett that Gray should convey his interest in the placer claim to Carter, and that Carter should procure a patent for the 160 acres as a placer mine, and that when the patent was procured he should reconvey to Gray and Bennett the portion of the 160 acres covered by their lode claim. This arrangement was carried into effect. Gray under this agreement with Powell conveyed his one-eighth interest in the placer claim to Carter, and Powell, acting for Carter and in his name, executed bonds for title to Gray and Bennett, by which he obligated himself, upon the receipt of a patent to the 160 acres of the Blue John placer claim, to convey to Gray and Bennett that part of the tract which was covered by the Blue John lode claim. This 20-acre tract lay in the northwest portion of the 160 acres, the position of which can be better understood by reference to the plat accompanying the statement of facts.

The statute of the United States under which mining claims of that kind were patented required that at least $500 worth of improvement in the way of developing the mine should be made on each claim before a patent therefor would be issued. Gray

and Bennett, the owners of the lode claim referred to above, had done work on their claim, and by procuring the co-operation of these parties Carter was enabled to use this improvement as a part of the improvement required to be made on his claim. By acting for them in this way he obviated any contest between himself and these owners of the lode claim, and became, in effect, a trustee for them for their interest in this land. In this way Powell, acting for Carter, obtained the patent to the 160 acres in Carter's name. But, although the patent was obtained in that way for Carter, it seems that Carter and the parties in St. Louis whom he represented had no actual notice of the agreement made by Powell in the name of Carter with Gray and Bennett. These parties in St. Louis, who were represented by Carter and Powell, organized in 1894 a corporation known as the Southwestern Zinc Company, for the purpose of having this property transferred to it when the title was obtained by Carter. Powell was agent of this company also. The patent to the 160 acres of land was obtained by Carter in 1895, and in 1896 Carter conveyed the land to the Southwestern Zinc Company by quitclaim deed for the nominal consideration of one dollar, and the company issued stock to the parties interested in the mining claim for whom Carter had procured the patent to the extent of their interest in the land.

The zinc company afterwards refused to convey to Gray and Bennett any interest in the land, and they brought this action against Carter and the zinc company to compel the company to carry out the contract made by Powell, the agent, with Bennett and Gray. The company denied that Powell had authority to make such a contract, and alleged that it was a purchaser for value without notice of the claims of plaintiffs. The defendant also filed a motion to dismiss on the ground that the causes of action set up by Gray and Bennett were separate and distinct, and could not be joined.

First, we are of the opinion that there was no misjoinder of actions. By reference to the bond for title executed by Powell in the name of Carter to Gray, it will be seen that Powell agreed that Carter, so soon as he obtained the title to the placer claim, should, upon payment by Gray of his part of the expenses, convey to Gray all that portion of the placer claim covered by

the Blue John lode claim.   In other words, he agreed to convey to Gray the full 20 acres covered by the lode claim, notwithstanding Bennett was interested in the lode claim.   It will be noticed that, as Gray was the owner of a one-eighth interest in the 160-acre placer claim, amounting to 20 acres, he conveyed to Carter the same amount of land that Powell for Carter agreed to reconvey to him.   But Powell, acting for Carter, also agreed to convey to Bennett a one-fourth interest in that part of the placer land covered by the lode claim.   In other words, he agreed to convey to Bennett one-fourth of the same land he agreed to convey Gray. As the contracts made by Powell in the name of Carter with Gray and Bennett, though separate, covered the same land in part, it was proper for both of these parties to join in the action in equity, so that the seeming conflict between these two contracts could be determined, and the title cleared in one action.

The omission of the name of Gray at one place in the deed from him to Carter is a matter of no moment, as it is plain that it was a mere clerical omission that does not affect the validity of the deed in law, much less in equity.

Coming down to the merits of the case, as Powell was the agent of Carter, and also of the zinc company, these defendants must be held to have had notice of the means by which he obtained for them the interest of Gray in this placer claim.   Gray was the owner of a one-eighth interest in the 160-acre placer claim.   At the request of Powell, the agent of Carter, he conveyed this land to Carter under a written contract that Carter would reconvey to him.   Carter accepted the deed, and now claims the right to hold the land on the ground that he had no notice of the contract made by Powell.   But he had no reason to suppose that Gray was making a gift of this land to him, and, before he accepted the deed, he should have ascertained the consideration to be paid for it.   If Carter authorized Powell to acquire title to the mining claims and accept deeds for the same in the name of Carter, then notice to Powell was notice to Carter.   So we think that it is plain that he must be treated as having notice of this contract made by Powell with the plaintiffs.   If he had notice, then the parties whom he represented must be held to have had notice; and if they had notice, the zinc company formed by them for the express purpose of having Carter convey these lands to

it had notice. Parties affected with notice of that kind can not escape the consequences thereof by forming a corporation and having their agent convey the land to the corporation and then set up that the corporation is an innocent purchaser for value. These parties were the officers and agents of the corporation, and notice to them was notice to the corporation.

If the case turned solely on the authority of Powell to bind his principal by a contract of the kind which plaintiffs seek to have performed in this case, we might hesitate to hold that he had such authority under the power of attorney executed by Carter to him. But the contract, so far as plaintiffs are concerned, has been executed, and defendants have accepted the benefits of it. Whether their agent had the authority to make the contract or not, equity will not permit these defendants to accept the benefits of this contract, and at the same time escape its burdens. But for this agreement made with plaintiff, Carter could never have procured the legal title to this claim, formerly owned by plaintiffs. It was to the mutual benefit of these parties that the legal title of this land should be conveyed to Carter. But he held it in trust as well for Gray and Powell as for the other owners, and we see no reason why he and the zinc company should not be made to carry out the contracts made by Powell with Gray and Bennett.

The only question as to which we have felt some doubt is whether this contract which is asked to be enforced was not one in fraud of the rights of the Government. The price required by law to be paid the United States for a patent to a lode claim is five dollars per acre, while the price for a patent to a placer claim is only half that amount. For this reason counsel for appellant say that, if plaintiffs' statements are true, then this land was conveyed by Gray to Carter for the purpose of having him procure a patent to it as a placer claim, and thus cheat the United States out of $2.50 per acre. But this contention can not be sustained, for the patent to Carter expressly excepts any lode or vein of valuable metal known to exist within the limits of the grant previous to November 2, 1902. As the Blue John lode claim was located in 1887, it does not seem that the rights of the United States to any lode or vein then known to exist within the bounds of the tract conveyed by this patent would be affected

thereby. Again, Gray had an interest, not only in the lode claim, but in the placer claim also. If we disregard entirely the rights of Gray and Bennett that are founded on the lode claim, still, as Gray was a joint owner with Carter of this placer claim, there is certainly no reason why the defendants should not be compelled to perform their contract with Gray. But the contract with Gray calls for the full 20 acres claimed by plaintiff. If Gray is willing to turn over one-fourth of the 20 acres to Bennett, defendants are not thereby injured, nor are the rights of the Government in any way affected. In fact, the government is not complaining, and, so far as the evidence shows, the motives of the parties in making this contract were legitimate and proper.

On the whole case, we are of the opinion that the decree was in accordance with equity and right. It is therefore affirmed.