## GRAYSONIA-NASHVILLE LUMBER COMPANY *v.* SALINE DEVELOPMENT COMPANY.

## Opinion delivered April 12, 1915.

1. TIMBER—CONVEYANCE—INTEREST IN LAND.—The conveyance to A. of the timber on a certain tract of land is a conveyance of an interest in the land itself.

2. TIMBER DEEDS—PURCHASE PRICE—LIEN—PURCHASER WITH NOTICE.— Plaintiff company sold the timber on certain lands to the N. company at a certain sum per thousand feet. Defendant company then purchased the timber from the N. company. *Held*, the recitals in the deed from plaintiff company to the N. company were such as to put defendant company upon notice of its liability to pay for the timber according to the terms of the contract, and that it was bound thereby.

3. VENDOR AND PURCHASER—INTEREST IN LAND—SUBSEQUENT PURCHASER— NOTICE.—A vendor of land who has parted with the legal title, has, in equity, a lien on the land for the unpaid purchase money, as against the vendee and his privies, including subsequent purchasers with notice; and a subsequent purchaser is affected with notice of all recitals in the title deeds of his vendor, whether recorded or not.

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; affirmed.

The Saline Development Company instituted this action against the Graysonia-Nashville Lumber Company to recover the value of certain timber which it alleged the defendant company cut from its land without paying therefor. The defendant filed an answer in which it claimed title to the timber cut from the land, and also the title to that yet standing on the land, and alleged that the plaintiff's claim was a cloud on its title to the timber. The defendant asked that the case be transferred to chancery, and on its motion, the cause was transferred to equity and heard and determined there. The facts briefly stated, are as follows:

On the 11th day of January, 1911, the Saline Development Company, a corporation, entered into a written contract with the Nashville Lumber Company, also a corporation, whereby the former corporation sold the latter all the merchantable timber standing upon certain lands known as the Barefield tract, in Howard County, Arkansas, the lands comprising 1,562½ acres.

The contract recited that the timber had been estimated by Lemieux Brothers and comprised, in the aggregate, 2,623,000 feet, or thereabouts, for which the purchaser had made settlement with the seller at the rate of $2 per thousand feet. The contract further recited that it is conceded by both parties that the said estimate is below the actual amount of merchantable timber upon said lands and that it is understood that the purchaser will pay at the rate of $2 per thousand feet for all the timber exceeding the amount estimated.

The contract also recites that the vendor has on the same day executed to the purchaser a deed conveying the timber purchased, and this deed is referred to and made a part of the contract. The contract in question was signed by the Saline Development Company by W. H. Toland, general manager; and by the Nashville Lumber Company by H. C. Anderson, assistant manager. The contract then contains the following clause: "I agree to the above terms and conditions and guarantee the payment of over-

charge by Graysonia-Nashville Lumber Company. A. C. Ramsey, G. M., G.-N. L. Co.''

On the 11th day of January, 1911, the Saline Development Company executed a deed to the Nashville Lumber Company to the merchantable timber upon certain lands described in the deed, containing in the aggregate 1,562½ acres. The deed recites that it is executed for the purpose of carrying into effect the former contract of the Saline Development Company with the Nashville Lumber Company. The consideration recited in the deed is the sum of $5,298 cash at the time of the execution and delivery of the deed and remainder due, if any, payable as the cutting of the timber proceeds at the rate of $2 per thousand feet.

The Graysonia-Nashville Lumber Company was organized in June, 1910. At the time of its organization, it took over a large portion of the assets of the Nashville Lumber Company and of the Graysonia-McLeod Lumber Company. The Nashville Lumber Company executed to it a timber deed for most of the timber which it had purchased from the plaintiff company, and the defendant company agreed to pay therefor the sum of $3 per thousand feet.

W. H. Toland was general manager of the Saline Development Company, and acted for it in making the sale of the timber to the Nashville Lumber Company.

A. C. Ramsey was a stockholder in the plaintiff company, and was the general manager of both the Nashville Lumber Company and of the defendant company at the time the contract was entered into.

He acted for the Nashville Lumber Company in making the contract, but the contract was signed by H. C. Anderson, assistant general manager of the Nashville Lumber Company.

Anderson testified that as assistant manager, he was authorized to buy timber lands for the Nashville Lumber Company, and that he had authority from that company to make the contract with the plaintiff company; that he was employed by the defendant company to take charge of

its timber lands, and was also treasurer of that company. He stated that he did not know how far his authority to purchase timber lands for the defendant company extended, but that he had bought timber lands for it; that the defendant company never turned down any purchase of land or timber while he was in its employ; that he had made settlements for the amount of timber that had been purchased by him for the defendant company; that it was not exclusively his duty to ascertain what was due to different parties who delivered timber to the defendant company, but that he did that character of work and that defendant company had not at any previous time refused to abide by any settlement he had made; that the market value of timber of the character of that on the Barefield lands was $2 per thousand in 1911; that Doctor Toland came to him for a settlement under the contract in question in this case, and that he admitted that the defendant company owed the plaintiff company something over $700 on settlement for timber.

W. W. Brown was president of the defendant company, and also was connected with the Nashville Lumber Company at the time the contract in question was entered into. He stated that he was vice president of the Nashville Lumber Company at the time A. C. Ramsey was its general manager, and that Ramsey had authority to buy timber and land for that company; that he knew that Ramsey had purchased the timber on the Barefield tract and approved the purchase. Brown continued as president of the defendant company until some time in November, 1912, at which time W. E. Grayson became president. The timber in controversy was cut from the land while Brown was president, and Ramsey general manager of the defendant company.

W. E. Grayson testified that only the executive committee had authority to purchase timber and lands for it, and that he did not know anything of the purchase of the timber on the Barefield lands until after he became president of the defendant company in November, 1912.

According to the by-laws of the defendant company, the executive committee had power to make all contracts concerning the purchase of land for the company. The by-laws provided that the general manager should exercise full control over the operation of the mills, tramways and other property of the company, and that he should have the care and management of all the company's property, **real and personal**; that his acts should be subject to the approval of the executive committee.

The chancellor found that on the 11th day of January, 1911, the plaintiff company entered into a written contract with the Nashville Lumber Company for the sale of the merchantable timber on the Barefield tract of land, and that contemporaneously it executed its deed to the Nashville Lumber Company conveying the timber on said lands to it; that said contract provided for the payment of $2 per thousand feet based upon the estimate contained in the contract, which was paid in cash, and for the further payment of $2 per thousand feet by the Nashville Lumber Company for all the timber cut in excess of the estimate; that the recitals in the deed from the plaintiff company to the Nashville Lumber Company were of such kind and character as to put the defendant company upon inquiry such as would have disclosed the rights and equities of the plaintiff company; that A. C. Ramsey, general manager of the defendant company, had actual notice of the terms and conditions of the contract under consideration; that the defendant company is not an innocent purchaser of the timber taken from the Barefield land, and is liable to the plaintiff company for all timber cut by it on said lands in excess of the estimate mentioned in the contract between the plaintiff company and the Nashville Lumber Company at the rate of $2 per thousand feet.

The chancellor then appointed a master to take testimony and ascertain the amount of timber that had been cut by the defendant company from the Barefield lands. Upon the coming in of the report of the master, the court found that the plaintiff company had been paid the sum of $5,246 on the contract between it and the Nashville

Lumber Company; that the timber paid for amounted to 2,623,000 feet at $2 per thousand; that 543,243 additional feet had been cut from the lands, and that the defendant company owed the plaintiff company for this 543,243 feet of timber at $2 per thousand feet, which amounts to $1,086.

A decree was entered in favor of the plaintiff company in accordance with the finding of the chancellor and the defendant company has appealed.

*W. C. Rodgers,* for appellant.

1. It is fundamental that the minds of the parties to a contract must meet and agree upon all the essential features of the contract. 78 Ark. 586; 90 Ark. 437; *Id.* 131; 95 Ark. 421; 97 Ark. 613. There is no meeting of the minds of the parties upon all the essential features of the contract in this case, unless the endorsement by Ramsey, "I agree to the above terms and conditions and guarantee payment of average by Graysonia-Nashville Lumber Company," can be said to have effected that result. Yet this endorsement did not bind appellant. It was merely his personal undertaking, if anything. Moreover, he had no authority to act for both the appellant and Saline Development Company. The authority of the general manager of appellant is limited by the by-laws of the company as follows: "His acts shall be subject to the approval of the executive committee," and there is no testimony that his act in this respect was ever approved by the executive committee. 3 Clark & Marshall, Corporations, § 760; 103 U. S. 651; 88 Ala. 630; 48 Kan. 672.

If Ramsey's acts were a fraud upon the appellant, the latter is not chargeable with any notice he may have had with reference to the title. 40 N. E. 362.

2. The master in this case having been appointed over the protest of appellant, and not by consent, his findings are merely persuasive, and this court will exercise its own judgment with reference to the same, rejecting all irrelevant and incompetent evidence considered in the trial below. 91 Ark. 549; 23 Ark. Law Rep. 517; 92

Ark. 359; 4 Ark. 251; 76 Ark. 153; 78 Ark. 209; 96 Ark. 589; 97 Ark. 135; 99 Ark. 218.

*J. G. Sain,* for appellee.

1.   The purchaser of real estate is bound to take notice of all recitals in the chain of title through which his own title is derived. Not only is he bound by everything stated in the several conveyances constituting that chain, but he is bound fully to investigate everything that may affect his title, to which his attention is thereby directed. 53 Miss. 701; 20 Ind. 40; 26 *Id.* 333; 4 Little (Ky.) 317; Wade on Law of Notice, § 330; 59 Ark. 291; 50 Ark. 328.

The endorsement made by Ramsey corroborates the fact that appellant recognized the contract of appellee and its rights.

The mere fact that Ramsey owned stock in both companies would not deprive him of authority to make the endorsement, nor is it any evidence of fraud upon the appellant. 69 Ark. 85.

But the evidence shows that the president of the company knew of the purchase of this timber and approved it; and the by-laws of the company provide that the instructions of the president shall be taken by subordinates as having received the sanction of the directors.

2.   The findings of the master are justified under the evidence.

HART, J., (after stating the facts).   (1)   The conveyance by the plaintiff company to the Nashville Lumber Company of the timber on the Barefield land was a conveyance of an interest in the lands themselves. *Liston* v. *Chapman & Dewey Land Co.,* 77 Ark. 116; *Collins* v. *Bluff City Lbr. Co.,* 86 Ark. 202; *Indiana & Arkansas Lbr. & Manufacturing Co.* v. *Eldridge,* 89 Ark. 361.

(2-3)   In the case of *Stephans* v. *Shannon,* 43 Ark. 464, the court held: "A vendor of land who has parted with the legal title, has, in equity, a lien on the land for the unpaid purchase money, as against the vendee and his privies, including subsequent purchasers with notice; and a subsequent purchaser is affected with notice of all

recitals in the title deeds of his vendor, whether recorded or not.''

To the same effect, see *Wilson* v. *Shocklee,* 94 Ark. 301; *Green* v. *Maddox,* 97 Ark. 398; *Miller* v. *Mattison,* 105 Ark. 201.

See, also, *Gaines* v. *Summers,* 50 Ark. 322, where it is held:

''A person purchasing an interest in lands, 'takes with constructive notice of whatever appears in the conveyances constituting his chain of title.' If anything appears in such conveyances 'sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and if he does not make it, he is guilty of bad faith or negligence,' and the law will charge him with the actual notice he would have received if he had made it.''

So, too, in the case of *Swan* v. *Benson, Admr.,* 31 Ark. 728, it was held that a vendor's lien for purchase money is solely a creature of equity, and does not depend upon stipulation or contract, and a purchaser with notice is bound by it. It was also further held that knowledge that part of the purchase money remains unpaid is sufficient notice.

In the application of these well settled principles of law, it may be said that the plaintiff company in equity had a lien on the timber for the unpaid purchase money against the Nashville Lumber Company and subsequent purchasers with notice. The defendant company having purchased the timber on the Barefield tract from the Nashville Lumber Company, was required to take notice of everything recited in the deed from the plaintiff company to the Nashville Lumber Company. The deed from the plaintiff company to the Nashville Lumber Company recited that $5,298 in cash was paid at the time of the execution and delivery of the deed. It also provided that the remainder due, if any, was to be payable as the cutting of the timber proceeded at the rate of $2 per thou-

sand feet. The deed was referred to in the contract which had been executed between the plaintiff company and the Nashville Lumber Company, and the contract was referred to in the deed. By an examination of this contract the defendant company could readily have ascertained that an estimate had been made of the amount of the timber upon the land, and that the cash payment was based upon that estimate, and that both parties to the contract recognized that this estimate was too low, and that an additional amount was to be paid as the timber was cut.

If the defendant company had pursued with ordinary diligence the inquiry suggested by the deed from the plaintiff company to the Nashville Lumber Company, it would have led to actual knowledge of the equities of the plaintiff company. Moreover, the evidence shows that the general manager and the treasurer and land man of the defendant company had actual knowledge of the facts in the case, and their knowledge, under the circumstances, was imputable to the defendant company. See *Carter* v. *Gray,* 79 Ark. 273.

Another reason for upholding the finding of the chancellor is that the undisputed evidence shows that the transaction was fair and reasonable and absolutely free from fraud. It is true that A. C. Ramsey was a large stockholder in the plaintiff company, but Doctor Toland was the largest stockholder in that company, and acted for it. W. W. Brown was the president of the defendant company and vice president of the Nashville Lumber Company during the time Ramsey was general manager. He stated that he knew Ramsey had purchased the timber on the Barefield land and approved of the purchase. The deed from the Nashville Lumber Company to the defendant company recites a consideration of $3 per thousand feet, and it is admitted by the defendant company that this was a reasonable price. The deed from the plaintiff company to the Nashville Lumber Company recites a consideration of $2 per thousand feet. The president of the defendant company knew that Ramsey had purchased the

timber in question for the benefit of the defendant company and approved of the purchase. The company proceeded to cut the timber off of the land and accepted all the benefits of the contract. Under these circumstances it ought not to hold to the fruits of the purchase, and not be bound by the terms thereof. See, Thompson on Corporations (2 ed.), vol. 2, sections 1241, 1242; Cook on Corporations (7 ed.), vol. 3, § 662.

The only remaining question to be disposed of is whether or not the chancellor erred in his finding as to the amount of timber cut from the land. A good deal of testimony was taken on this point, but we do not think any useful purpose could be served by setting it out in detail and commenting upon it at length. We deem it sufficient to say that we have carefully and patiently read the testimony bearing on this phase of the case, and are of the opinion that the finding of the chancellor is not against the preponderance of the evidence. Therefore, under the well settled rules of this court, his finding must be upheld.

We are of the opinion that the finding of the chancellor upon the whole case was correct, and the decree will be affirmed.