### WILSON v. SHOCKLEE.

### Opinion delivered March 21, 1910.

1. SALES OF LAND—VENDOR'S LIEN.—A vendor of land who has parted
   with the legal title has in equity a lien on the land for the unpaid pur-
   chase money, as against the vendee and his privies, including subse-
   quent purchasers with notice. (Page 304.)

2. ESTOPPEL—MARRIED WOMAN.—A married woman who sold her land
   and parted with the legal title will not be estopped to enforce her
   equitable vendor's lien by reason of the fact that her husband rep-
   resented to the purchaser that he owned the land and waived such
   lien where there is no testimony that she knew of such representa-
   tion or permitted her husband to use her separate estate as his own.
   (Page 305.)

Appeal from Columbia Chancery Court; *J. M. Barker,*
Chancellor; affirmed.

#### STATEMENT BY THE COURT.

This action was instituted by Mrs. Fannie M. Shocklee in
the Columbia Chancery Court against J. B. Wilson and J. E.

Farris. It was commenced in November, 1907, and its object was to enforce a vendor's equitable lien on 226 acres of land situated in Columbia County, or to redeem from a mortgage on said lands executed in favor of the defendant, Wilson.

Wilson filed a separate answer, in which he interposed the defense of an innocent purchaser for value of said lands. The facts are as follows: On the 15th day of May, 1904, J. E. Farris and N. L. Malone purchased a machine called a "merry-go-round" from M. L. Martin Company, and gave their note in the sum of $1,500, indorsed by J. E. Smith and J. J. Murphy, for the purchase price. The note was made payable on or before the 15th day of May, 1904, and it was agreed that the title to the machine should remain in the vendor until paid for. Farris and Malone applied to J. B. Wilson for a loan to pay off said note, and offered to give him as security therefor a lien on certain real and personal property belonging to them. Wilson deemed the security insufficient, and refused to make the loan. It was then agreed that T. M. Shocklee should sell to Farris the land in controversy, and that Farris should mortgage the same to Wilson as additional security for the loan. Pursuant to this agreement, on the 9th day of May, 1904, T. M. Shocklee executed to J. E. Farris a deed to the lands in controversy for the consideration of $800, which was recited in the deed to have been paid. The consideration, however, was not in fact paid, and Farris gave to T. M. Shocklee his two promissory notes therefor. Mrs. Fannie M. Shocklee, the wife of T. M. Shocklee, signed the deed, and acknowledged her relinquishment of dower and homestead therein. On the 12th day of May, 1904, J. E. Farris and his wife executed a mortgage on said lands in favor of J. B. Wilson, to secure the payment of the $1,500 above referred to, which was made payable on the 15th day of October, 1904. After the deed of T. M. Shocklee to J. E. Farris was executed it was learned that the title to the lands was in Fannie M. Shocklee. On the 16th day of May, 1904, Fannie M. Shocklee executed a deed to J. E. Farris to the lands in controversy, and the consideration, which was recited in it as paid, remained the same as in deed of T. M. Shocklee. Default having been made in the payment of the mortgage debt, Wilson caused the mortgage to be foreclosed under the power of sale

contained in it, and became the purchaser at the foreclosure sale on the 25th day of February, 1905, for the sum of $458.33. On the 28th day of February, 1906, the trustee, who made the sale under the power contained in the mortgage, executed to J. B. Wilson a deed to said lands.

At the hearing of the case it was shown by the testimony of J. E. Farris and T. M. Shocklee that J. B. Wilson knew, at the time he made the loan to J. E. Farris and Farris executed the mortgage to him, that the purchase price of the land had not been paid. These two witnesses and Mrs. Fannie Shocklee also testified that they were present in a justice's court where there was a trial between Mrs. Fannie M. Shocklee and J. B. Wilson over the rent of the land, and heard Wilson say that he had asked Shocklee if he was not afraid to let Farris have the land for the reason that Farris might never pay for it.

Mrs. Fannie M. Shocklee in her own behalf testified that the land was conveyed to her several years before she conveyed it to Farris, and that she was the owner of it at the time she executed the deed to Farris; that Farris was to pay her $800 for the land, and that the purchase price had never been paid; that she never saw the notes given for the purchase money until after she had executed the deed.

J. B. Wilson in his testimony admits that he knew that Farris was not paying for the land, but said that it was agreed by Shocklee that he would either give a mortgage on the land to secure the indebtedness of Farris, or would convey the land to Farris for the purpose of enabling Farris to mortgage it. In this latter statement he is corroborated by his attorney, who represented him in the matter.

The chancellor found that Farris had not paid the purchase price of said lands with the accrued interest to Mrs. Fannie M. Shocklee, and that the same was due; and also found that J. B. Wilson was not an innocent purchaser of said lands. A decree was accordingly entered in conformity with his findings, and the defendant Wilson has duly prosecuted an appeal to this court.

*Stevens & Stevens,* for appellant.

1. Appellee's equity, if any, cannot be superior to appellant's. T. M. Shocklee was the owner of the land in equity,

controlled the legal title and caused it to be conveyed to Farris. He is entitled to the purchase money, and, if there is a lien, he holds it. 17 Fed. 304.

2. In the disposal of the land appellee had no contract, express or implied, through which the right to have a lien declared upon the land could be maintained. The deed itself acknowledges receipt of the purchase money. The notes taken do not describe the land, and there was no contract giving a lien to any one. The so-called lien is but a right, even when it exists, which may in a proper case be enforced in equity. 27 Ark. 229. It is not assignable, and has no existence until established by a decree of a court. *Id.* 231, 232.

3. The court erred in instructing the jury that it devolved upon appellant to show by a preponderance of the testimony that he did not know of the notes outstanding. Only when the defendant sets up affirmatively the defense of innocent purchaser is the preponderance on him. 29 Ark. 568.

4. Appellee's husband being her agent in the sale of the land and, while so acting, having obtained knowledge of the purpose of Farris in buying, his knowledge so obtained is knowledge to her. 1 Clark & Skyles, Agency, § 475. If she can sue, it is as an undisclosed principal, and she cannot enforce any right her agent could not enforce. *Id.* § 537.

*J. M. Kelso* and *J. E. Hawkins,* for appellee.

1. There is no proof to sustain the contention that the land was paid for by appellee's husband, and that he was the equitable owner; but if it was true, and he caused it to be conveyed to appellee, the presumption would be that it was a gift, and she would have both the legal and equitable title.

2. The court found that Wilson did have notice of the outstanding indebtedness, and that he was not an innocent purchaser. If he had notice, the vendor's lien was as effective against him as against Farris. 2 Washburn, Real Prop., (6 ed.), § 1033; Hawley & McGregor on Real Prop. 259; 77 Ark. 309; 54 Ark. 467; 75 Ark. 228; 80 Ark. 86.

HART, J., (after stating the facts). "A vendor of land, who has parted with the legal title, has, in equity, a lien on the land for the unpaid purchase money, as against the vendee and his privies, including subsequent purchasers with notice." *Ste-*

*phens* v. *Shannon,* 43 Ark. 464; *Osceola Land Co.* v. *Chicago Mill & Lbr. Co.,* 84 Ark. 1.

The undisputed evidence in this case shows that the plaintiff was the owner of the land when she conveyed it to Farris, and that the purchase price is due, and has not been paid. The evidence on the part of plaintiff shows that the defendant Wilson knew these facts at the time he made the loan to his co-defendant, Farris, and took the mortgage from him on the lands in controversy to secure the same. Indeed, Wilson does not deny this, but testified to a state of facts which tends to show that he thought the title to said lands was in T. M. Shocklee, instead of his wife, Mrs. Fannie M. Shocklee, and that T. M. Shocklee had agreed to waive his lien in equity for the unpaid purchase money. Under this state of facts, if the title to the land had been in T. M. Shocklee, he would be estopped from setting up his vendor's lien for the unpaid purchase money as against the defendant Wilson. *Scott* v. *Orbison,* 21 Ark. 202.

The most serious question in the case is, can, under the facts and circumstances as shown by the record, the doctrine of estoppel be invoked against the plaintiff, Mrs. Fannie M. Shocklee?

In the case of *McCombs* v. *Wall,* 66 Ark. 336, the court held: "By virtue of his general authority as such, a husband has no authority to bind his wife by an agreement as to her land." In the case of *Latham* v. *First National Bank of Fort Smith,* 92 Ark. 315, in discussing the acts and declarations of the husband in regard to his wife's property, the court said: "A principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person dealing with an agent is bound to ascertain the nature and extent of his authority. No one has the right to trust to the mere presumption of authority, nor to the mere assumption of authority by the agent. *City Electric St. Ry. Co.* v. *First Nat. Exch. Bank,* 62 Ark. 33, 40. These well settled principles must determine this controversy in favor of appellant. The declarations of Latham, the agent of appellant, that he owned the lease contract, and that appellee could have the same as security, were wholly incompetent as against appellee to establish the

authority of Latham to use the rents belonging to Mrs. Latham for the purposes stated, or to show that he owned the lease."

In the present case there is no testimony tending to show that Mrs. Shocklee permitted her husband to use her separate estate, or to represent that the land in controversy would be conveyed to Farris for the purpose of enabling him to execute a mortgage on it to the defendant, Wilson, to secure the loan made by Wilson to Farris, or to show that she knew her husband had made such representations.

Applying the rules announced above, it is plain that the representations made by T. M. Shocklee to Wilson can not be used as evidence against Mrs. Shocklee. The recitals in the deed of Mrs. Shocklee to Farris that the purchase price was paid can not avail the defendant, Wilson, in the face of the proof that he was told that the purchase money was not paid before he made the loan to Farris.

We find no error in the record, and the decree will be affirmed.