UNION & PLANTERS' BANK & TRUST COMPANY *v.* SIMMONS.

Opinion delivered November 17, 1924.

1. VENDOR AND PURCHASER—EQUITABLE LIEN.—A vendor who has parted with the legal title has in equity a lien on the land for the unpaid purchase money, as against his vendee and subsequent purchasers with notice.

2. VENDOR AND PURCHASER—NOTICE OF RECITALS OF TITLE DEEDS.—One who purchases land will be affected with notice of all recitals in the title deeds of his vendor, whether recorded or not.

3. VENDOR AND PURCHASER—CONSTRUCTIVE NOTICE.—Where anything appears in title deeds sufficient to put a prudent man on inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that which he is about to purchase, the purchaser will be charged with such notice.

4. VENDOR AND PURCHASER—NOTICE OF UNPAID PURCHASE MONEY.—Notice in title deeds of a purchaser's vendor that part of the purchase money remained unpaid was sufficient to put the purchaser on notice.

5. VENDOR AND PURCHASER—MISTAKE IN ABSTRACT OF TITLE.—A mistake in an abstract of title does not relieve a purchaser from making inquiry suggested by a title deed of his vendor.

6. VENDOR AND PURCHASER—RELIANCE ON VENDOR'S REPRESENTATION.—A purchaser may not rely upon representations of his vendor as against recitals in the vendor's title deeds.

Appeal from Poinsett Chancery Court; *Archer Wheatley*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Union & Planters' Bank & Trust Company brought this suit in equity against L. D. Williams and wife to foreclose a mortgage on land.

A. N. Simmons instituted an action in the same chancery court against J. W. Thomas and wife and L. D. Williams and wife, and the Maxwell Investment Company, a corporation, to foreclose an equitable lien for the purchase price of said land. Both cases were consolidated and tried together. So far as this appeal is concerned, A. N. Simmons is the original source of title of the land in question.

On the 17th day of October, 1917, A. N. Simmons and wife executed a warranty deed to J. W. Thomas to certain land, including the land in controversy. The deed recites that it is executed by A. N. Simmons and Ella H. Simmons, his wife, "for and in consideration of the sum of $6,666.66, to us in hand paid and to be paid by J. W. Thomas." The deed was duly acknowledged on the 19th day of October, 1917, and filed for record on the 24th day of October, 1917.

On the 3rd day of December, 1918, J. W. Thomas and wife executed a warranty deed to eighty acres of said land to L. D. Williams. The deed recites that it is executed in consideration of the sum of $8,000, "one-third of which is paid in cash, and the remainder secured by deed of trust on land, to us in hand paid by L. D. Williams, and the assumption of $3,333.33, same being two-thirds of a mortgage, the balance due on which is $5,000 in favor of A. N. Simmons, with all interest notes." This deed was duly acknowledged on the 3rd day of December, 1918, and filed for record on January 13, 1919.

On the 17th day of October, 1917, J. W. Thomas and wife executed a mortgage or deed of trust to E. G. McDermith on said land to secure an indebtedness which the said J. W. Thomas owed A. N. Simmons, in the sum of $5,250. This mortgage was duly acknowledged on the

day of its execution, but was not filed for record until the 11th day of April, 1922.

On the 1st day of November, 1920, L. D. Williams and wife executed a mortgage to the Maxwell Investment Company, a corporation, to secure an indebtedness to it in the sum of $3,000, evidenced by promissory notes. This mortgage was duly acknowledged on the 4th day of December, 1920, and filed for record on the 7th day of December, 1920.

On the 12th day of September, 1921, the said Maxwell Investment Company, for a valuable consideration, duly assigned said mortgage and the notes secured thereby to the Union & Planters' Bank & Trust Company in due course of trade, and said assignment was made before said notes and mortgage were due.

Other facts will be stated or referred to in the opinion.

The chancellor was of the opinion that a vendor's equitable lien on said land existed in favor of A. N. Simmons which was superior to the mortgage lien of the Union & Planters' Bank & Trust Company.

A decree was entered of record in accordance with the finding of the chancellor, and the decree expressly recites that the Union & Planters' Bank & Trust Company recovered of the defendant, L. D. Williams, the amount of his mortgage indebtedness with the accrued interest, and that the same be declared a lien upon the land in controversy, subject, however, to the prior lien held by A. N. Simmons as herein decreed.

Union & Planters' Bank & Trust Company has duly prosecuted an appeal to this court.

*Guy P. Long, C. C. Gillespie* and *R. V. Wheeler,* for appellant.

*H. P. Maddox,* for appellee.

The deed from Simmons to Thomas, reciting a consideration paid and to be paid, was recorded long before the execution of the mortgages held by the appellant, and amounted to notice to the appellant of the vendors' lien. Likewise the recitals as to the consideration in the deed

from Thomas to Williams were notice to appellant. 47 Ark. 301; 63 Ark. 268; 37 Ark. 571; 126 Ark. 420; 120 Ark. 167; 144 Ark. 79. This lien is enforceable against any one purchasing with notice thereof. 130 Ark. 167; 21 Ark. 202; 29 Ark. 357. See also 35 Ark. 100; 50 Ark. 322; 103 Ark. 425.

Hart, J., (after stating the facts). A vendor of land who has parted with the legal title has in equity a lien on the land for the unpaid purchase money, as against his vendee and subsequent purchasers with notice; and a subsequent purchaser will be affected with notice of all recitals in the title deeds of his vendor, whether recorded or not. If anything appears in such deeds sufficient to put a prudent man on inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and, if he does not make it, he is guilty of bad faith, or negligence, and the law will charge him with the actual notice he would have received if he had made it. Notice that part of the purchase money remains unpaid is sufficient notice. *Gaines v. Summers,* 50 Ark. 322; *Graysonia-Nashville Lbr. Co. v. Saline Development Co.,* 118 Ark. 192; and *Madden v. Suddarth,* 144 Ark. 79.

Our statement of facts shows that A. N. Simmons conveyed this land by a warranty deed to J. S. Thomas on the 17th day of October, 1917. The deed recites a consideration of $6,666.66, "in hand paid and to be paid by J. W. Thomas."

On the 3rd day of December, 1918, J. W. Thomas and wife executed a warranty deed to said lands to L. D. Williams. The deed recites a consideration of $8,000, "one-third of which is paid in cash, and the remainder secured by a deed of trust on land, to us in hand paid by L. D. Williams, and the assumption of the sum of $3,333.33, same being two-thirds of a mortgage, the balance due on which is $5,000 in favor of A. N. Simmons." The mortgage of L. D. Williams and wife to the Maxwell Investment Company, which was transferred to the

Union & Planters' Bank & Trust Company, was not executed until the 1st day of November, 1920.

The deeds from A. N. Simmons and wife to J. W. Thomas and from J. W. Thomas and wife to L. D. Williams were both in the line of title of the Maxwell Investment Company, and that company transferred its mortgage from L. D. Williams to the Union & Planters' Bank & Trust Company. The mortgagee and its assignee were subsequent purchasers and affected with notice of all recitals in the title deeds of their vendors.

L. D. Williams, when he purchased the land in controversy from J. W. Thomas, knew that the latter still owed A. N. Simmons a balance for the land, and gave Thomas his obligation for the amount. The deed recites that Williams assumed the sum of $3,333.33 which Thomas owed Simmons. The amount Williams assumed to pay was a part of the consideration of his purchase, and was at the time a lien on the lands.

The Maxwell Investment Company could have ascertained this fact from inquiries suggested by the recitation of the consideration in the deed from Thomas to Williams and by the deed from Simmons to Thomas. It will be remembered that the latter deed contains the recitation that it is for a consideration of $6,666.66, paid and to be paid by J. W. Thomas. An inquiry of Thomas or of Simmons would have revealed the fact that there was a balance of the purchase money due Simmons.

It is true that the abstract of title furnished the Maxwell Investment Company recited that the consideration to Simmons had been paid; but this recitation in the abstract of title necessarily could not control. If the Maxwell Investment Company was affected with notice of all recitals in the title deeds of its vendor, it could not ignore these recitals and rely upon a recital in the abstract of title. In other words, a mistake in the abstract of title would not relieve it from making inquiries suggested by the deed in the line of its title. Neither would the fact that Williams made the statement that there were no liens on the land when he made his

application for a loan relieve it from, making the inquiries suggested, in the deeds just referred to. Any inquiry made by the Maxwell Investment Company to Thomas or Simmons would have disclosed the fact that there was a balance of purchase money due Simmons, and that Williams had expressly agreed with Thomas to assume a part of this, and that the amount he assumed to pay was a part of the consideration of his purchase from Thomas. ·

It follows that the decree must be affirmed. ·