JACK COLLIER EAST COMPANY v. BARTON.

5-1318                                    307 S. W. 2d 863

Opinion delivered November 25, 1957.
[Rehearing denied January 13, 1958.]

*Penix & Penix, Douglas Bradley* and *Cooper Jacoway,* for appellant.

*Frank Sloan, Terry L. Shell,* and *Barrett, Wheatley, Smith & Deacon,* for appellee.

PAUL WARD, Associate Justice. The principal issue involved on this appeal concerns the proper construction and application of the last paragraph of Ark. Stats., § 51-605. The entire section is set out below with the portion referred to above in italics.

"The lien for the things aforesaid, or work, shall attach to the buildings, erections or other improvements, for which they were furnished or work done, in preference to any prior lien or incumbrance or mortgage existing upon said land before said buildings, erections, improvements or machinery were erected or put thereon, and any person enforcing such lien may have such building, erection or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter; *Provided, however, That in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, then said lien shall be prior to the lien given by this act.*"

The first line of the above Section refers to the lien for labor and material as set out in Ark. Stats., § 51-601 to 51-604 inclusive.

The material facts out of which grew the issues in this litigation are not in dispute and in so far as they are relative to this opinion, may be briefly stated.

Appellants, Guy A. Pardew, Sr. and his wife, Bonnie I. Pardew, owned a parcel of land adjoining the City of Jonesboro and, desiring to sell the same advantageously, divided the same into lots. The plan was to build dwellings on the individual lots and offer them, completed, to prospective purchasers, without the Pardews having to put up any money. In furtherance of this plan the Pardews executed separate deeds to the individual lots to one J. C. Vaught of Little Rock who

was a building contractor. Each of the deeds was a regular warranty deed and recited a consideration of one dollar paid.

Vaught was unable to provide the financing, so he entered into a written contract with appellant, Jack Collier East Co. Inc. (hereafter called "East") to do so. That is, Vaught contracted with East to furnish the temporary finances necessary to pay for labor and materials until, as contemplated, a permanent loan could be secured (through the V. A., the F. H. A. or from some other source) for each individual purchaser. It was contemplated by all, apparently, that when such a permanent loan was obtained and the house was sold, full payment would be made to East, for labor and materials, to Vaught for his profit, and to the Pardews for the price they were to get for the lot. In order to make everyone as secure as possible and at the same time to make the plan workable, East was to have a first mortgage (executed by Vaught and wife) on the lot for the construction money, and the Pardews were given a note and mortgage (executed by Vaught and wife) for the price of the lot. In each instance Pardews' mortgage was filed after East's mortgages was filed, and in some instances their mortgage contained the statement that it was subject to East's mortgage.

Several houses were built and sold under the above or a similar plan and there was no difficulty, but, in the case of the four houses here involved, Vaught went into bankruptcy before they were sold and before anyone was paid in full, except that the Pardews were paid for one lot. For convenience at the trial the four houses were referred to as Job No. 8, Job No. 10, Job No. 11, and Job No. 12, and we shall refer to them in the same way. It is admitted that in each instance East has now paid to Vaught the full amount of money shown in the mortgage.

When it became apparent that Vaught would not be able to pay all claims, appellee, Barton Lumber Company, filed suit against the Trustee for Vaught in bankruptcy, the East Company, the Pardews, and all others

known to have furnished labor or materials in connection with said buildings, to recover $3,114.01 on Job No. 8, $5,965.09 on Job No. 10, $4,333.01 on Job No. 11, and $3,885.25 on Job No. 12. The prayer was for judgment in the above amounts, that the same be declared a lien against each parcel of real estate involved, and that it be declared prior to all other claims or liens unless other claims are found to be on a parity.

After a full and complete hearing the trial court gave judgments for the various claimants, found that appellee's lien was superior to that of East and the Pardews, and that the lien of the latter was inferior to East's lien. The houses were ordered sold by a receiver appointed by the court and the proceeds were applied in accordance with the priorities mentioned above. From the above decree East and the Pardews now prosecute this appeal.

For the reasons hereinafter set forth, we conclude that the decree of the trial court must be sustained. First, we find that the testimony sustains the trial court in the following material findings of facts: (a) The mortgages which Vaught gave to East were regular in form and contained no writing to indicate the money was being advanced to pay for labor and material in the construction of the houses; (b) The Barton Lumber Company had knowledge of the fact that Vaught was securing construction loans in some manner; (c) The Pardews conveyed the land to Vaught for the specific purpose of permitting Vaught to construct residences thereon, and; (d) All liens were filed in due time and in the form and manner required by law. It is not contended that the written contract between Vaught and East was placed of record.

East earnestly and ably contends that its mortgage, given for the purpose of securing money to construct the residences, constitutes a lien superior to the statutory lien given to the Barton Lumber Company for materials furnished, and that this is true even though the mortgage contained no language indicating the money was to be used as above indicated. This contention is

not however insisted upon as to Job No. 8 for the reason that East concedes its mortgage was not filed for record until after work had been commenced. As to Jobs 11 and 12 it is conceded that East's mortgage was filed before work was begun or materials furnished. The situation, in this respect, is not clear as to Job No. 10 but, due to the conclusions we reach hereafter, this point is immaterial, and we can treat East's mortgage as having been filed first.

We can agree with East that, in those cases where its mortgage was filed before construction began, it would have been entitled to a lien on the building (in addition to the land) if the mortgage had shown the "purpose" for which the money was advanced or was to be advanced by it. This because of the plain language in the emphasized portion of § 51-605 copied above. Without this language it is conceded of course that it would have a first lien on the land itself.

The interesting and vital question, however, is: Does East lose his lien priority (on the dwelling) when no such "purpose" language appears in the mortgage itself?

Appellant, East, in answering the above question in the negative, relies heavily on our holding in *Ashdown Hardware Company* v. *Hughes,* 223 Ark. 541, 267 S. W. 2d 294, and *Sebastian Building and Loan Ass'n* v. *Minten,* 181 Ark. 700, 27 S. W. 2d 1011. We do not draw the same conclusion from these cases. The material facts in the *Ashdown* case differed materially from the facts here. There the mortgage did contain the "purpose" language in these words: "Mortgagors understand and agree that all advances made under this mortgage shall be used exclusively for building of cabins on this property and improving same . . ." No such language appears in the East mortgage of course. The court also said: "It is fair to assume that had appellants inspected the mortgage record and the provisions of this mortgage, it is not likely that they would have furnished materials for the cabins without first making arrangements with appellee, Hughes, for payment". The court then quoted from the *Sebastian*

*Building and Loan Ass'n* case, *supra,* language, which we think confirms our view, to the effect that laborers and materialmen can learn the "purpose" for which money is advanced by examining the clerk's record, and thereby protect themselves. Referring again to the *Sebastian* case, the court there clearly announced that the test of priority was the *purpose* for which the money was loaned but, in discussing Crawford & Moses' Digest § 6909 (which is the same as Ark. Stats. § 51-605 copied above), the court also made this statement: "The binding force of a mortgage results from the contract between the parties *as expressed in the mortgage".* *(emphasis supplied)*

Appellant, East, attaches great significance to the fact that appellee had actual knowledge of the fact that it was advancing money (under his mortgage) for the purpose of erecting the dwellings, i. e., to pay for labor and materials, contending that such actual notice takes the place of the language left out of the mortgage, and that it would be inequitable for us to hold otherwise. It is not clear from the record, as reflected by the Chancellor's finding, just how much appellee knew about the arrangements between Vaught and East but assuming, for the purpose of this opinion, that Barton did know East was furnishing the construction money, still we cannot agree with this contention. If, as we have repeatedly held, an unrecorded mortgage or a recorded mortgage with no valid acknowledgment, constitutes no lien against a purchaser with actual notice, then it would seem illogical to hold here that appellee lost its lien priority because of knowledge it received outside the record. As we see it, East can only claim a prior lien here because of the particular kind of mortgage described in § 51-605 above, but it had no such mortgage of record. Practical considerations also sustain the view we have adopted, we think. It would place a great burden on materialmen and, in particular, laborers not to be able to rely on public records for protection. **Otherwise** they would have to rely on hear-say and oral agreements, and would have to make extensive investigations for which they are ill equipped. We have examined the

authorities on which appellant, East, relies to show that actual notice is sufficient but fail to find in any merit in them as they pertain to a different situation.

Considerable argument is devoted to the proposition that, under the terms of the mortgage, East was obligated to make advances and that such advances were not optional, and authorities are cited to show that, in such cases, the mortgagee is held to have a first or prior lien. We think however, since we are here dealing with the construction of a statutory mortgage and lien, that such cases are not helpful one way or the other, except as presently pointed out. In the case of *American Bank & Trust Company* v. *First National Bank of Paris,* 184 Ark. 689, 43 S. W. 2d 248, the court, in dealing with future advances, had this to say: "One may execute a valid mortgage to secure a debt to be contracted in the future but, in order to do so, there must be an unequivocal agreement *in the instrument itself* that it is given for debts to be incurred in the future." "The effect of our cases is that a mortgage to secure future advances . . . is valid, but, if such purpose is intended to be accomplished, *that fact must clearly appear from the instrument* . . ." (Emphasis supplied) To the same effect is *Patterson* v. *Ogles,* 152 Ark. 395, 238 S. W. 598. It seems to us to follow that the same reason which requires information relative to future advances to be set forth in a mortgage would require the "purpose" to be set forth in a construction mortgage.

From the above we conclude that appellant's lien was subject to the lien of appellee.

We likewise agree with the Chancellor that Pardews' lien is subordinate to the lien of East. He found. and we agree, that the deeds from the Pardews to Vaught were made to enable Vaught to construct the improvements mentioned and that some of them specifically provided they should be subordinate and inferior to the mortgages given Jack Collier East Company, Inc.; That the Pardews waived the priority of their vendor's equitable lien for the unpaid purchase price of said lands, having conveyed the lands to Vaught for the specific

purpose of permitting Vaught to construct residences thereon in order that Vaught might sell the property pursuant to the arrangement made, and; that others have acted to their detriment by reason of such acts and the Pardews cannot, therefore, be heard to complain whether or not the materialmen and mechanics had notice that the Pardews had not been paid.

We held in *Buckeye Cotton Oil Company* v. *Westerfield,* 186 Ark. 505, 54 S. W. 2d 295, that when the holder of a title retention note subsequently took a mortgage he thereby waived his retention of title because the two were inconsistent. Likewise, though perhaps to a less degree, there appears an inconsistency in Pardews' claim of a vendor's lien for the purchase price and also a mortgage for the same debt. The former, they claim, is prior to East's lien while the latter, they admit, is subsequent to it.

Since, as we hold, Pardews' lien is subject to East's lien, it follows from what we have heretofore said, it is also subject to the lien of appellee.

Affirmed.

Justice HOLT, dissents.

Justice McFADDIN, concurs.

Justice MILLWEE, not participating.