## James DEMPSEY & Jan TAYLOR d/b/a J & J PLUMBING COMPANY *v.* MERCHANTS NATIONAL BANK OF FORT SMITH, ARKANSAS

86-208 729 S.W.2d 150

Supreme Court of Arkansas
Opinion delivered May 18, 1987

*Phillip J. Taylor*, for appellant.

*Taylor & Vandergriff*, by: *David B. Vandergriff*, for appellee.

DARRELL HICKMAN, Justice. This case presents a question of priority between a materialman's lien and a mortgage. The mortgage was filed before work commenced on the building site, but it was filed on the wrong property. A corrected deed and mortgage were later filed on the right property. The trial judge held the mortgage had priority. We disagree and reverse the decree.

The facts are that the landowners, Pat and Charlotte McGowan, obtained a deed to a small tract of land in Fort Smith containing .23 acres and recorded it on May 24, 1984. A construction money mortgage was filed the same day. The McGowans intended to build a duplex on the property. However, the deed and mortgage described the wrong property. The tract they intended to buy was actually located 260.2 feet west of the tract described in the deed and mortgage. Both tracts described were located on a larger parcel of land being developed called the Georgetown Park Condominium Project. Work was commenced on the tract in question on May 29, 1984. The land description error was discovered, and a new deed and mortgage were prepared and filed for record on July 16, 1984. These documents described the intended tract and the place where work had commenced. The owners went bankrupt. Suits were filed to foreclose the mortgage and foreclose the materialmen's liens. All claims were consolidated in this case.

The question is: who comes first, the materialmen or the mortgagee? The chancellor held the mortgagee, Merchants National Bank of Fort Smith, had priority over the materialmen. Only one materialman appeals, the J & J Plumbing Company. The chancellor should have held the plumbing company had

priority, and the decree is accordingly reversed. Because of our decision on priority, we do not reach the question of the language of the construction money mortgage. Other questions raised will be answered after our discussion of the priority question.

 Priority is generally determined by the maxim "prior in time, prior in right." Comment, *Priority of Liens on Real Property in Arkansas: Mortgages, and Mechanics' and Materialmen's Liens*, 12 Ark. L. Rev. 170 (1958). The rights of a materialman are set by statute. Ark. Stat. Ann. §§ 51-601—51-642 (Repl. 1971). This being a case of new construction, any lien a materialman has relates back to the time when work commences. *Wiggins* v. *Searcy Fed. S&L*, 253 Ark. 407, 486 S.W.2d 900 (1972). Consequently, such a lien takes priority over any claims perfected after that time. It is settled law that a mortgage filed after work commences will be subordinate to any liens based on the commenced work. *Dempsey* v. *McGowan*, 291 Ark. 147, 722 S.W.2d 848 (1987); *Lyman Lamb Co.* v. *Union Bank of Benton*, 237 Ark. 629, 374 S.W.2d 820 (1964); *Planters Lumber Co.* v. *Jack Collier East Co.*, 234 Ark. 1091, 356 S.W.2d 631 (1962). A mortgage becomes a lien at the time it is recorded and not before. Comment, 12 Ark. L. Rev. 170 *supra*.

It was undisputed that the owners and the mortgagee made a mutual mistake in describing the property in the first instruments. The property the McGowans bought and mortgaged was correctly described in the second instruments.

 It was stipulated that the appellant materialman did not know of the first mortgage for this construction. In other words the appellant materialman had no actual notice of the mortgage. In such a case, according to American Jurisprudence, the materialman's lien has priority. That treatise reads:

> Where a mortgage, by mutual mistake, is made on a different tract of land from that intended, and subsequently an improvement is made on the land intended to be mortgaged without notice of the intended mortgage thereon, a lien for the improvement takes priority. 53 Am. Jur. 2d, Mechanics' Liens, § 274.

This statement is based on the case of *Gaines* v. *Childers*, 38 Or. 200, 63 P. 487 (1901), which has similar facts to the case before

us. In *Gaines* the mortgage was filed on the wrong property. Work commenced and eventually a materialman's lien was perfected on the property intended to be mortgaged. The materialman was successful in its foreclosure suit. A year later, the mortgagee filed suit to reform the mortgage so it would apply to the land intended. Foreclosure of the mortgage was sought as well as a ruling that the mortgagee had priority over the rights acquired by the materialman. The court held the materialman's lien had priority.

■ Some assistance in answering the question can be gained from examining cases involving mortgages with "after acquired property" clauses; that is, mortgages which provide they will also cover any property a mortgagor later acquires. Do such mortgages on the newly acquired property relate back to the time the mortgages were executed and filed, or merely become effective against third persons on the date the new property is acquired? What about existing liens? In *U.S.* v. *Westmoreland Manganese Corp.*, 134 F. Supp. 898 (E.D. Ark. 1955), the court said:

> There can be no question that, as a general rule, in cases of mortgages containing after acquired property clauses the liens of such mortgages attach to after acquired property at the time that title thereto vests in the mortgagor; where, however, if the property at the time it comes into the possession or ownership of the mortgagor is burdened with a mechanics or miners' lien, that lien takes priority over the mortgage lien, although actually subsequent thereto in point of time.

The appellee concedes in this case that the second mortgage cannot relate back to the time the first mortgage was filed, and no effort was made to reform the mortgage.

The appellee makes two central arguments for priority of its mortgage. First, it argues that the materialman's lien could not attach when work commenced because the McGowans did not have title to the land until the correction deed and mortgage were filed on July 16, 1984. Their argument is that Donoho Properties Limited Partnership, the grantor in the two deeds, owned the land at the time work commenced. As authority for the proposition that a materialman's lien cannot attach unless the owner of the land contracts for the work, *Sebastian Bldg. & Loan Assn.* v.

*Minten*, 181 Ark. 700, 27 S.W.2d 1011 (1930), and *Katterjohn Concrete Products* v. *Coffman*, 264 Ark. 503, 573 S.W.2d 306 (1978), are cited. Neither case is controlling. In *Sebastian Bldg.*, the "owner" of the land simply had an unenforceable oral contract to buy it when work commenced. In *Katterjohn* the facts were undisputed. First, a mortgage was filed by the bank. Second, the work was commenced. Third, the deed was filed. We upheld the trial court's decision that the mortgage had priority for two reasons: the law of after-acquired title applied; that is, title later acquired related back to the time the mortgage was filed, and the owner had no title when work commenced. No mention is made in *Katterjohn* of what agreement the "owner" had about the land, and we only know title was not acquired until the deed was filed. The other difference in *Katterjohn* is obvious. The mortgage was filed *first* on the land in question before work commenced, and title could relate back to the date of the mortgage. The mortgage was notice to any materialman that a prior claim existed on that land. In this case there was no such notice to the materialman; there was no mortgage recorded on the land in question when work commenced. The materialman got there first according to the record. In this case ownership was in the McGowans when they filed the first deed.

In a case directly in point, *Mason* v. *Jarrett*, 218 Ark. 147, 234 S.W.2d 771 (1950), we held that a correction deed related back to the date of the first deed with an incorrect description. We quoted with approval:

. . . '. . . the second deed, with its particular description of the land, conveyed, as between the parties thereto, related back and became effective as of the date of the first deed. A second deed can be looked to in aid of a description given in a prior deed.'

So, in the case at bar, the plaintiff actually owned the lands involved—though under an incorrect description—before he filed this action; and the correction deed, when executed, related back to the plaintiff's original deed of March 13, 1943, and was not a new or after-acquired title within the rule stated in *Percifull* v. *Platt (supra)* and *Dickinson* v. *Thornton (supra).* . . .

That is precisely the case before us regarding the

question of ownership, as between the McGowans and Donoho Properties. The owners of the property in this case were the McGowans when the first deed was filed.

The appellee's other argument rests on cases which, in our judgment, do not apply—those that involve legal descriptions which are ambiguous or defective, yet are held to be notice to third persons. For example, in *Caraway Bank* v. *U.S.A.*, 258 Ark. 858, 529 S.W.2d 351 (1975), a mortgage containing a metes and bounds description of property located in a subdivision called Hidden Valley incorrectly identified the property as being located in Township 18 North, when in fact the property was located in Township 19 North. We found the mortgage good for two reasons. The Hidden Valley subdivision, properly identified on the record, was located in Township 19. The metes and bounds description indicated the property was in Hidden Valley. Also, a plat of lots was made part of the description. The mortgage itself furnished a key to the error; therefore, the description was held good against a bona fide purchaser or a third person without notice.

In *Johnson* v. *Grissard*, 51 Ark. 410, 11 S.W. 585 (1888), we found a general description of property to be constructive notice to a third party. The description simply read "all my crop of corn, cotton, or other produce that I may raise, or in which I may have in any manner an interest, for the year 1884, in Faulkner County, Arkansas." In *U.S.* v. *Westmoreland Manganese Corp., supra*, the court analyzed our decision in *Johnson* this way:

> . . . that the record of the mortgage was constructive notice, and that all persons buying any cotton from the mortgagor in Faulkner County were bound to inquire whether it was covered by the mortgage to Grissard.

The first deed and mortgage in this case appeared to be a perfectly legitimate transaction. There were no errors in the description which would place one on notice that an error was made; there was no key to the fact that the wrong property had been described.

The appellee argues, however, that the materialman could have or should have known the description was wrong because the only construction taking place in the Georgetown

development at that time was on the intended plot of land. Essentially, that was the reason the trial judge found the description good. The trial judge simply changed the deed and mortgage to read the way it was corrected. Extrinsic or outside evidence is admissible to explain an ambiguity in a deed but not to change it. 23 Am. Jur. 2d, Deeds, § 310. According to American Jurisprudence, "[w]here the description of premises conveyed in a deed is definite, certain, and unambiguous, extrinsic evidence cannot be introduced to show that it was the intention of the grantor to convey a different tract or that he did not intend to convey all of the land described." 23 Am. Jur. 2d, Deeds, § 312.

In *Caraway Bank* v. *U.S.A., supra*, this statement is quoted from *U.S.* v. *Westmoreland Manganese Corp., supra*:

It is a well settled principle of Arkansas law that a mortgage will not be held void for uncertainty, even as to third persons, whereby any reasonable construction it can be sustained; and where the description used furnishes a key whereby a person, aided by extrinsic evidence, can ascertain what property is covered, such description is sufficient.

Extrinsic evidence may be used in cases when the description gives a key to the mistake or there is an ambiguity. For example, in *Johnson* the key was "all my . . . cotton." That placed a third person on notice to make certain any cotton bought from the mortgagor was not mortgaged. In this case the trial court held that the materialmen could know the description was wrong by seeing that no other construction was in progress and that a mistake was made in the description. But how was the appellant to know it was the wrong property? There was no key in the first deed and mortgage; there was no ambiguity to be cured by extrinsic evidence. The extrinsic evidence—seeing the state of construction—was used to simply change a description that was definite and certain.

This Georgetown area was a development area, and from all one could gather, the owners had more than one transaction or development underway. Indeed, the owners did later build two more units on this part of the development.

A materialman should not be placed on notice by

simply looking at construction work. The materialman is bound by the record and ought to be able to rely on it. In *Jack Collier East Company* v. *Barton*, 228 Ark. 300, 307 S.W.2d 863 (1957), we said:

> . . . It would place a great burden on materialmen and, in particular, laborers not to be able to rely on public records for protection. Otherwise they would have to rely on hearsay and oral agreements, and would have to make extensive investigations for which they are ill equipped.

See also Comment, 12 Ark. L. Rev. 170, *supra*. There was no actual, legal, or constructive notice that the appellee had a mortgage on this land when work commenced.

■ The bank made a mistake when it filed its mortgage. It was filed on the wrong land. Whether the bank relied on the McGowans, a lawyer, a realtor, or its own officers when it prepared the mortgage is immaterial. The materialmen made no mistake and had a right to rely on the record. Between these parties, the bank must suffer the consequences of its error.

There was some dispute as to whether other work was going on in the area before the second mortgage was filed, but no one disputed that the appellant commenced its work before the second mortgage was filed. Therefore, the decree regarding priority is reversed, and the appellant's lien has priority over the mortgage.

■ The appellee purchased the land and improvements for $10,000 at the foreclosure sale. The appellant's lien is in the sum of $4,532; however, interest on this sum was denied by the chancellor. This was error which the appellee concedes. In *Advance Const. Co.* v. *Delta Asphalt and Concrete Company*, 263 Ark. 232, 563 S.W.2d 888 (1978), we held that materialmen were entitled to prejudgment interest at six percent, based on Ark. Const. art. 19, § 13. Therefore, the appellant is entitled to prejudgment interest at the rate of six percent from the time the complaint was filed. In this case that was November 9, 1984.

■ The appellant was also allowed attorney's fees. The appellee cross-appeals from this decision and is right—attorney's fees are not proper in such a case. *Millsap* v. *Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986). But that argument

is made too late. The record reflects that the appellant prayed for attorney's fees in its complaint; that the appellee failed to specifically object to that prayer; that the chancellor, at the conclusion of trial, asked for all attorneys of record to submit worksheets for fees; and that the appellee again failed to object. The appellee had the opportunity to object at trial and did not; instead, it argues this point for the first time on appeal. We have repeatedly held that objections not made at trial cannot be raised for the first time on appeal. *Merriman* v. *Yutterman*, 291 Ark. 207, 723 S.W.2d 823 (1987). Therefore we affirm the chancellor's award of attorney's fees.

■ The appellee also argues on cross-appeal that the chancellor erred in awarding a lien for labor when only material was furnished by the appellant. *Christy* v. *Nabholz Supply Co.*, 261 Ark. 127, 546 S.W.2d 425 (1977). The amount of the lien was stipulated to by the parties, which in our judgment precludes arguing this question on appeal.

Reversed and remanded with directions to enter a consistent decree.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I could agree with the majority if J & J Plumbing Company was adversely affected by the substitution of the lot correctly described for the lot incorrectly described. But it was not. In fact the correction benefitted J & J Plumbing because it, like the other materialmen, was placing materials on the lot to which the McGowans had no legal title and, but for the correction, its lien would have been worthless. *Katterjohn Concrete Products* v. *Coffman*, 264 Ark. 503, 573 S.W.2d 306 (1978). The erroneous description, by metes and bounds, described the property as:

> Commencing at the Southeast corner of said NE/4, NW/4; thence West 603.5 feet; along the South line of said Northeast Quarter, Northwest Quarter; thence North 25 feet to the point on the Northerly Right-of-Way line of South O Street; thence North 10° 04 minutes West, 301.00 feet to the point and place of beginning; thence North 10° 04 minutes West, 109 feet; thence East 90.4 feet; thence South 10° degrees 04 minutes East 109.0 feet; thence West 90.4 feet to the point and place of beginning

containing 0.23 acres more or less. . .

In fact the description should have been *863.07* feet rather than *603.5* feet. Thus, the tract *intended* to be conveyed was identical to the property actually conveyed except that it lay 260.02 feet to the west.

I concede the parties stipulated that J & J Plumbing had no actual knowledge of the mortgage. But that is not controlling. There was no stipulation that it had no legal notice and the chancellor made a specific finding that the materialmen were on notice that the property being improved by them was subject to the mortgage to Merchants National Bank.

The important thing is whether J & J Plumbing was misled by the error in the description. There was no stipulation that J & J Plumbing thought the property was unencumbered by a construction money mortgage so that its lien for materials would be a first lien. Significantly, J & J Plumbing does not argue here or below that it was under the impression it would have a first lien. Therefore, the correction deed altered its position only for the better.

What is controlling under our cases is whether materialmen could reasonably have been alerted to the fact that the construction was not occurring on the incorrectly described property, but on adjacent property, in this case immediately to the west. The chancellor found J & J Plumbing was on notice of the discrepancy because the only construction in the pertinent subdivision, Georgetown Park, was on the lot which was later correctly described, whereas there was no construction on the lot incorrectly described, or anywhere else in the area. That finding was sustained by the proof and those factors are sufficient under our cases. In *Caraway Bank* v. *United States of America*, 258 Ark. 858, 529 S.W.2d 351 (1975), where the wrong township was used in the mortgage, we held that a third party lien claimant could have located the correct property by extrinsic evidence and by the mortgage itself. Thus a mortgage with a deficient description had priority over intervening claimants without actual notice. In *Caraway Bank* we quoted with approval language from *United States* v. *Westmoreland Manganese Corp.*, 134 F. Supp. 898 (E.D. Ark. 1955):

It is a well settled principal of Arkansas law that a mortgage will not be held void for uncertainty, even as to third persons, whereby any reasonable construction can be sustained; and where the description used furnishes a key whereby a person, aided by extrinsic evidence can ascertain what property is covered, such description is sufficient.

The majority cites *Gaines* v. *Childers*, 38 Or. 200, 63 P. 487 (1901). But there is a material difference in the facts. In *Gaines*, the trial court found the materialman had neither knowledge *nor notice* of the year-old claim of the mortgagee, whereas here the correction occurred within days and to the detriment of no one. Moreover the chancellor in this case reached a contrary finding and that finding was supported by the proof.

The majority relies essentially on cases which follow the rule, "first in time, first in right." However, in many of those cases the interests of innocent third paties had intervened. Where those are lacking, as here, the equities of the case have governed. Thus, in *Allen* v. *McGaughey, et al.*, 31 Ark. 252 (1876), Kimberly executed a deed of trust to Allen which erroneously described one quarter-section of a 1,200 acre tract as southeast instead of southwest. It was undisputed that Kimberly intended to convey the southwest quarter to Allen but only after a foreclosure and sale to Allen did the error come to light. By that time McGaughey had acquired a judgment against Kimberly and his judgment lien was prior to Allen's claim. This court held the judgment lien was subject to Allen's right to reform his deed to make it conform to the contract. In *Ft. Smith Milling Co.* v. *Mikles*, 61 Ark. 123 (1895) the same result was reached:

That courts of equity can correct mistakes in contracts of all descriptions by reforming them so as to carry out the intention of the parties is beyond question. In the absence of a statute, they will interfere to correct mistakes between the original parties, even against a judgment lien, or purchasers at sheriff's sales under executions with notice of the facts, notwithstanding the judgment under which the lien was acquired, or upon which the executions were issued, were rendered subsequent to the execution of the contracts, but prior to the reformation. In such cases the equities are *dehors* the contracts, and the judgment liens

attach subject to them; and parties purchasing with notice cannot defeat them.

I believe the chancellor should be affirmed.