AGRI BANK FCB, Formerly Farm Credit Bank of St. Louis and the Federal Land Bank of St. Louis *v.* Jordan MAXFIELD, Successor Trustee of the Maxfield Trust U/T/A Dated 11/8/85

93-1063                                            873 S.W.2d 514

Supreme Court of Arkansas
Opinion delivered April 11, 1994

*Kemp, Duckett, Hopkins, & Spradley*, by: *Hal Joseph Kemp*, for appellant.

*Coxey & Coxey*, by: *J. Kent Coxey*, for appellee.

ROBERT L. BROWN, Justice. This case concerns the construction of a warranty deed and whether the language of the deed evidenced on its face the retention of a vendor's lien in the amount of $95,000 so as to give appellee Jordan Maxfield, Successor Trustee, a priority lien. The chancellor ruled that a vendor's lien was sufficiently created and further ruled that the lien took priority over a mortgage in favor of appellant Agri Bank FCB. We hold that a vendor's lien for $95,000 was not evidenced by the deed, and we reverse and remand.

J.R. Maxfield, Jr. owned land in Carroll County known as the 5M Ranch. In 1979, he became ill and decided to sell this property. His sons, Jordan Maxfield and Morgan Maxfield, agreed to buy it. On February 4, 1980, Maxfield and his wife, Kathryn Maxfield, executed and delivered a deed to the 5M Ranch to Morgan Maxfield. The warranty deed read:

## WARRANTY DEED WITH

## ASSUMPTION OF DEBT ·

### With Relinquishment of Dower

KNOW ALL MEN BY THESE PRESENTS:

THAT, we J.R. MAXFIELD, JR. and wife, KATHRYN J. MAXFIELD, hereinafter called Grantors, for and in consideration of the sum of Ten Dollars ($10) and other good and valuable considerations, to us in hand paid by MORGAN MAXFIELD, hereinafter called Grantee, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto Morgan Maxfield of Clay County, Missouri and unto his successors and assigns forever, all of the Grantors interest in certain real estate briefly described as 1,500 acres more or less, in Township 20 North Range 27 West, in Carroll County, Arkansas, known as the 5M Ranch, which property is more particularly described on Exhibit "A" and incorporated herein by reference.

TO HAVE AND TO HOLD the same unto the said Grantee and unto his successors and assigns forever, with all appurtenances thereunto belonging.

AND we hereby covenant with said Grantee that we will forever warrant and defend the title to the said lands against all claims whatsoever, said conveyance being subject to all recorded easements and encumbrances.

AND I KATHRYN J. MAXFIELD, wife of said J.R. MAXFIELD, JR., for and in consideration of the sum of money, do hereby release and relinquish unto the said Grantee all my right of dower and homestead in and to said lands.

SAID Grantee hereby assumes the payment of certain notes totaling $240,000.00 in conjunction with this transfer of the above described 1,500 acres, more or less, in Carroll County, Arkansas.

WITNESS our hands and seals on this 4th day of February, 1980.

/s/ J.R. Maxfield, Jr.
_____
J.R. MAXFIELD, JR.

/s/ Kathryn J. Maxfield
_____
KATHRYN J. MAXFIELD

/s/ Morgan Maxfield
_____
MORGAN MAXFIELD

On February 4, 1980, Morgan Maxfield also executed and delivered to his father a promissory note in the amount of $95,000, payable on April 3, 1983. Jordan Maxfield, who was present, later testified that a Deed of Trust was executed by Morgan Maxfield at the same time, but no Deed of Trust was recorded or introduced into evidence at the hearing. There was no reference in the promissory note to a vendor's lien. No payment was made on the $95,000 promissory note. The warranty deed was recorded on April 4, 1980. On April 8, 1980, Morgan Maxfield executed a promissory note in the amount of $313,000 payable to Federal Land Bank of St. Louis (subsequently Farm Credit Bank of St. Louis and now Agri Bank FCB) and further executed a mortgage to secure the note. That mortgage was recorded on May 12, 1980.

Morgan Maxfield died in a plane crash on September 4, 1981, and his will was admitted to probate in Missouri. A petition for ancillary administration was filed in Carroll County, and several claims against the estate followed, including two claims by his father, J.R. Maxfield, Jr. One of those claims was for $95,000 predicated on the February 4, 1980 promissory note. The executor of the Estate objected to the claim.

On October 17, 1990, the 5M Ranch which secured the debt of the Agri Bank and allegedly the vendor's lien of J.R. Maxfield, Jr. was sold to Dam Site Better for $338,918.84 pursuant to an order of the probate court. On January 13, 1992, appellee Jordan Maxfield, Successor Trustee of the Maxfield Trust and the interest of J.R. Maxfield, Jr., filed an amended petition for declaratory judgment in chancery court asking that the $95,000 debt be declared to be a vendor's lien with first priority. Farm Credit Bank as predecessor to Agri Bank responded that its mortgage was in fact superior and that no vendor's lien for the $95,000 debt had been retained by the Maxfields. It counterclaimed for an unpaid debt

of $255,761.72 on its note plus interest, late charges, and attorneys fees, and prayed for foreclosure of its mortgage.

On June 4, 1993, the chancellor entered an order and found as follows on the vendor's lien question:

> A vendor's lien is created when the grantor of the real property retains in the document transferring title a lien securing the purchase price of the property. . . . The warranty deed clearly recites an existing indebtedness at the time the deed was executed. Even though the Deed provides for an assumption of the debt, that doesn't mean that it wasn't for a part of the purchase price of the property. In fact, there wasn't any testimony indicating the $240,000.00 debt mentioned in the deed was ever paid. The document creating the vendor's lien is clear and unambiguous and [the] Court does not need to go beyond it. The Court finds that a vendor's lien was retained by J.R. Maxfield in the property.

The chancellor then granted Jordan Maxfield, Successor Trustee, a vendor's lien securing the $95,000 promissory note and decreed it to be a first lien against the net sale proceeds of $338,918.84 derived from the sale of the 5M Ranch.

Agri Bank contends that the chancellor erred as a matter of law in finding that the warranty deed evidenced a vendor's lien on its face. We agree that this was error and reverse on this point.

The warranty deed in question was styled "Warranty Deed With Assumption of Debt With Relinquishment of Dower" and stated, "grantee hereby assumes the payment of certain notes totaling $240,000.00 in conjunction with this transfer of the above described 1,500 acres . . . ." There was no mention of the new $95,000 promissory note in the deed. Jordan Maxfield, Successor Trustee, urges that the express reference to the assumed payment "of certain notes" and the fact that part of the purchase price remained unpaid are enough to evidence a vendor's lien for the $95,000 note. We do not agree. A vendor's lien must either be stated in the deed or appear from the face of the deed. *Beard* v. *Bank of Osceola*, 126 Ark. 420, 190 S.W. 849 (1916). Here, neither circumstance occurred with respect to the new debt of $95,000.

There is a practical problem here, which we alluded to in a case dealing with a priority between mechanics liens and construction money mortgages, and which we believe to be relevant. *See Jack Collier East Co.* v. *Barton*, 228 Ark. 300, 307 S.W.2d 863 (1957). In *Barton*, we said:

> Practical considerations also sustain the view we have adopted, we think. It would place a great burden on materialmen and, in particular, laborers not to be able to rely on public records for protection. Otherwise they would have to rely on hear-say (sic) and oral agreements, and would have to make extensive investigations for which they are ill equipped. We have examined the authorities on which appellant, East, relies to show that actual notice is sufficient but fail to find in (sic) any merit in them as they pertain to a different situation.

228 Ark. at 305-306, 307 S.W.2d at 866.

The same holds true for Agri Bank in the case before us. The warranty deed at issue was recorded on April 4, 1980, and its mortgage from Morgan Maxfield signed four days later was recorded on May 12, 1980. Examination of the deed records would not have alerted a prudent researcher that a vendor's lien for a new promissory note in the amount of $95,000 had been retained. Partial payment by promissory note and by assumed debt are simply different means of satisfying the purchase price. The one does not necessarily follow the other. We conclude that the assumed debt language by itself did not put third parties, including Agri Bank, on notice that a vendor's lien in the amount of $95,000 for the new promissory note had been retained.

We reverse and remand for an order in accordance with this opinion.

Reversed and remanded.

HOLT, C.J., and NEWBERN, J., dissent.

CORBIN, J., not participating.

JACK HOLT, Chief Justice, dissenting. I dissent. The majority points out the pertinent language from the "Warranty Deed With Assumption of Debt" which stated that in consideration of

ten dollars and other good consideration the grantors conveyed the 5M Ranch, with the following declaration:

> SAID Grantee hereby assumes the payment of certain notes totalling $240,000.00 in conjunction with this transfer of the above described 1,500 acres, more or less, in Carroll County, Arkansas.

Morgan Maxfield, the grantee, signed the warranty deed and executed a promissory note dated the same day as the warranty deed, in favor of J. R. Maxfield, Jr. in the amount of $95,000.00. The thrust of Agri Bank's argument is that since the $95,000.00 note was not specifically set out in the warranty deed, then a vendor's lien was not created. After a hearing, the chancellor determined that the warranty deed was unambiguous and evidenced on its face a vendor's lien in favor of the trust, and further declared its priority over Agri Bank's mortgage, to which I agree.

I take issue with the majority's holding that the warranty deed with assumption of debt as written did not put Agri Bank on notice of the outstanding indebtedness. It is well settled that a vendor of land has an equitable lien on the land for the unpaid purchase price. *Wilson* v. *Shocklee*, 94 Ark. 301, 126 S.W. 832 (1910). Furthermore, a mortgagee who accepts a mortgage which recites a prior mortgage is estopped to deny the superiority of the prior mortgage. *Id.* Although our cases in this area are limited in number and are of some vintage, the law on vendor's liens has been addressed. Vendor's liens are discussed in *Talieferro* v. *Barnett*, 37 Ark. 511 (1881), wherein we held that a deed reciting that the land conveyed was held bound for the payment of the notes given was a valid expression of a lien. In addition this court has held that a subsequent purchaser is affected with notice of all recitals in the title deeds of his vendor, whether recorded or not. *Graysonia-Nashville Lumber Co.* v. *Saline Dev. Co.*, 118 Ark. 192, 176 S.W. 129 (1915). In *Graysonia* we noted an even older case, *Gaines* v. *Summers*, 50 Ark. 322, 7 S.W. 301 (1887) where we stated:

> A person purchasing an interest in lands, "takes with constructive notice of whatever appears in the conveyances constituting his chain of title." If anything appears in such conveyances "sufficient to put a prudent man on inquiry,

which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry, and if he does not make it, he is guilty of bad faith or negligence," and the law will charge him with the actual notice he would have received if he had made it.

*Gaines*, 50 Ark. 322, 327, 7 S.W. 301, 302.

We have long held that if a purchaser is informed by recitals in his chain of title that property has been sold on credit, he is bound to inform himself as to whether this debt has been paid. *Stroud* v. *Pace & Allison*, 35 Ark. 100 (1879); and where purchase money notes were described in deed, those notes constituted notice that the vendor had a lien for the unpaid purchase money. *Ponder* v. *Gibson-Homans Co.*, 166 Ark. 591, 266 S.W. 682 (1924). One cannot rely on an abstract in the face of recitals in a deed since a mistake in the abstract of title would not relieve one from making inquiries suggested by the deed itself. *Union & Planters' Bank & Trust Co.* v. *Simmons*, 166 Ark. 285, 265 S.W. 953 (1924). Union & Planters' Bank & Trust was not relieved from inquiry since the deeds had recitals even though the mortgagor made a statement in his loan application that there were no liens on the land to be mortgaged. *Id.*

The same principles ring true in this case. The recital in the Warranty Deed with Assumption of Debt put Agri Bank on notice that there was some outstanding indebtedness which placed on it the responsibility of making inquiry as to whether this prior indebtedness had been paid. They, like the bank in *Union & Planters' Bank & Trust*, could not rely on an abstract or statements of Morgan Maxfield, mortgagor, when the deed reflected a prior indebtedness. Having failed to make responsible inquiry, Agri Bank cannot now complain.

The other argument raised by Agri Bank is not addressed by the majority, but I will address it here for it too is without merit. Agri Bank alternatively argues that if there was a valid vendor's lien, then J. R. Maxfield, Jr. waived this vendor's lien by accepting a deed of trust. Agri Bank points out that at the hearing Jordan Maxfield testified that concurrently with the execution of the warranty deed, Morgan Maxfield gave J. R. Maxfield, Jr. a

deed of trust and that J. R. Maxfield, Jr. accepted this deed of trust as security. This deed of trust was never recorded nor was the document ever produced. It was allegedly in the possession of Morgan Maxfield after its execution, and Morgan died before this action came before the chancellor. Considering Jordan Maxfield's testimony, Agri Bank asserts that any vendor's lien was waived and that the trust must rely on the deed of trust to establish the existence and priority of the lien. The deed of trust being unrecorded, Agri Bank asserts priority.

A deed of trust is in legal effect a mortgage, *Tate* v. *Dinsmore*, 117 Ark. 412, 175 S.W. 528 (1915), and if a mortgage is given, then an equitable vendor's lien is indeed extinguished as the vendor must then rely upon the mortgage. *See Jack Collier East Co.* v. *Barton*, 228 Ark. 300, 307 S.W.2d 863 (1957). However, as this court said in *Chapman* v. *Chapman*, 55 Ark. 542, 544, 18 S.W. 1037, 1037 (1892):

> In the absence of an express waiver of a vendor's equitable lien for unpaid purchase money of land, or circumstances which show that it was his intention to waive it, the lien exists. "If under all the circumstances it remains in doubt, then the lien attaches." Generally, the acceptance of security other than the obligation of the vendee is evidence of intention to waive the vendor's lien and rely upon the other security. But this is only *prima facie* evidence of waiver. Each case must be determined upon its particular circumstances.

It was evident in *Chapman* that where there was a mortgage taken in exchange of the vendor's lien but it was invalidly acknowledged, no intent to waive the vendor's lien could exist until a valid recorded mortgage was received.

The trust cites *Chapman* and asserts that, though it may be presumed that some document was executed, there is no proof that this document was a valid deed of trust, that it covered the lands in question, or that there was any intent on the part of J. R. Maxfield, Jr. to rely on this deed to waive his vendor's lien. I agree. It is well settled that those who claim under a lost deed must prove its contents by clear, satisfactory, and convincing proof. *Witt* v. *Graves*, 302 Ark. 160, 787 S.W.2d 681 (1990). In light

of the limited information regarding the deed of trust and the fact that the vendor's intent was not brought out in his testimony, neither the contents of the deed of trust nor waiver of the vendor's lien was established.

Upon review of a chancellor's findings, we will not reverse unless the findings are clearly erroneous or clearly against the preponderance of the evidence. *Riddick* v. *Street*, 313 Ark. 706, 858 S.W.2d 62 (1993). Under these circumstances, I cannot say the chancellor's decision was clearly erroneous. Thus, I dissent.

NEWBERN, J., joins in this dissent.